## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TANNER BOOKER,

      Plaintiff,

v.                                          No. 2:23-cv-18 WJ/KRS

P.A.M. TRANSPORT, INC., and
IAN MURIUKI MWANGI,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Expedited Motion To Extend Expert Report Deadlines For Defendants' Expert Witnesses ("Motion") (Doc. 254), filed by Defendants P.A.M. Transport, Inc. and Ian Muriuki Mwangi on September 23, 2024. The Motion seeks a sixty-day extension of Defendants' expert disclosure deadline—from October 2, 2024 to December 2, 2024. Plaintiff filed a response opposing the Motion on September 27, 2024. (Doc. 261). Defendants filed a reply on September 29, 2024. (Doc. 264). Having now considered the parties' briefing, the record of the case, and the relevant law, the Court FINDS Defendants' arguments well-taken and GRANTS the Motion.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2022, Plaintiff was asleep in his Dodge Ram pickup truck, which was parked at a Petro truck stop outside of Deming, New Mexico. Attached to the Dodge Ram was a flatbed trailer with several large generators on it. Plaintiff alleges that Defendant Mwangi parked a P.A.M. Transport, Inc. tractor-trailer commercial motor vehicle several feet in front of Plaintiff's truck, and then failed to set the parking brake on the tractor-trailer, causing it to roll into and strike the flatbed trailer attached to Plaintiff's Dodge Ram, seriously injuring Plaintiff. (Doc. 289 at 3-

4). In a pre-suit demand letter, Plaintiff stated that he suffered a traumatic spine injury from the accident. (Doc. 1-5 at 4). But at some point during the course of these proceedings, Plaintiff disclosed that he also suffered a brain injury. Plaintiff's treating neurologist, Dr. Allan Block, was deposed on October 2, 2024, at which time he testified that Plaintiff suffered a mild traumatic brain injury, or a concussion, and that he continues to suffer from symptoms associated with post-concussion syndrome, including headaches, cognitive changes, mood swings, zoning out spells, irritability, imbalance, blurry vision, and light headedness. (Doc. 289 at 4). Dr Block further testified that "he does not expect [Plaintiff's] symptoms will subside during his lifetime." (*Id.* (citing deposition transcript)). Plaintiff alleges that not only Dr. Block, but "[s]everal treating physicians[,] have diagnosed [him] with a brain injury resulting from the accident," and that "one treating doctor" recommended that Plaintiff "have a peripheral nerve stimulator implanted into his head due to the trauma caused from the accident." (*Id.*) (citing excerpts from an Aug. 31, 2024, Life Care Plan). Plaintiff's designated "life care plan" expert apparently has opined that Plaintiff's "*medical* damages alone exceed $2,000,000.00." (*Id.* at 5 (emphasis in original)).

Plaintiff's complaint alleges various negligence-based claims,[1] and was filed in state court on December 6, 2022. Defendants removed the complaint to this Court on January 9, 2023. The original scheduling order, entered on April 26, 2023, provided that expert disclosures were to be made only two and three months later (June 30, 2023 for Plaintiff, and July 28, 2023 for Defendants). (Doc. 40 at 2). But those deadlines have been extended numerous times, in each instance after the filing of a joint or unopposed motion.

---

[1] *See* Doc. 294 at 9 (October 30, 2024 Mem. Op.) ("When reading the Complaint, it's obvious that this is a negligence case.").

In what turned out to be the first of many overly optimistic predictions of how much additional time the parties would need, the first joint motion to extend the expert disclosure deadlines requested one additional month, to July 31, 2023 for Plaintiff and August 30, 2023 for Defendants. (Doc. 51 at 2). On July 17, 2023, the parties jointly requested a further extension to October 2, 2023 and November 1, 2023, respectively. (Doc. 73 at 1). On August 31, 2023, Plaintiff identified the names of several additional medical providers, including his treating neurologist, Dr. Block. (Doc. 219 at 2; Doc. 219-1 at 2). Defendants later argued that the identification of Dr. Block as a provider in August 2023, "without more, did not alert Defendants to the brain injury claim, especially given that this case involves a minor parking lot accident in which any injuries were repeatedly and expressly denied by Plaintiff." (Doc 221 at 4). But Defendants' retroactive assertion of "any injuries" being "repeatedly and expressly denied" seems questionable given that, on September 21, 2023, less than a month after Plaintiff identified Dr. Block as a treating medical provider, the parties filed a joint motion to extend deadlines listing Plaintiff's "treatment for a traumatic brain injury" as a reason for the requested extension, as well as on-going pain treatment. (Doc. 134 ¶ 7(d)). The joint motion stated that Plaintiff "anticipate[d] supplementing discovery regarding these conditions as medical records are obtained," and that "[t]he parties require[d] a recalibration of the deadlines to fully explore these matters in discovery." (*Id.*). The parties also cited "ongoing discovery disputes" and "pending motions relating to discovery." (*Id.* ¶ 7).

The Court granted the September 2023 joint motion and the expert disclosure deadlines were extended to February 2, 2024 for Plaintiff and March 1, 2024 for Defendants. (Doc. 137 ¶¶ 1, 2). But those deadlines quickly became obsolete with the joint extension motion filed on November 10, 2023, in which the parties stated that they could not meet the expert disclosure deadlines (still two months away) because of pending discovery disputes regarding fact discovery, and because

the experts "will not be prepared to author reports or be deposed while discovery is ongoing." (Doc. 178 ¶¶ 13, 14). The parties requested and were granted extensions of the expert disclosure deadlines to May 3, 2024 and June 2, 2024, respectively. (*Id.* ¶¶ 2, 4; Doc. 179 ¶¶ 1-2).

On April 24, 2024, which was a little more than a week before Plaintiff's expert disclosures were due, Defendants filed an unopposed motion seeking an extension of the expert deadlines to August 1, 2024 for Plaintiff and September 2, 2024 for Defendants. (Doc. 201 ¶¶ 2, 4). Among other grounds for the extensions, Defendants stated that: (1) Plaintiff was "exploring a neck/brain implant and surgical intervention"; (2) "Plaintiff continue[d] to treat for his injuries and ha[d] seen new medical providers since the original expert deadline was set"; and (3) "[g]iven these new medical providers and changing medical trajectory, additional expert review, retention and testing [was] required and [could] not be performed by the current case deadlines." [*Id.* ¶¶ 13-15].

On July 12, 2024, Defendants again filed an unopposed motion to extend deadlines, which stated in the introductory paragraph that "[t]he parties seek a ninety (90) day extension for the current deadlines." (Doc. 208 at 1). Yet the unopposed motion went on to request only thirty additional days for expert disclosures and reports (September 2, 2024 for Plaintiff and October 2, 2024 for Defendants). (*Id.* ¶¶ 2, 4).[2] The motion explained that additional time was needed for expert (and other) deadlines because (1) Plaintiff was exploring a neck/brain implant and surgical intervention; (2) Plaintiff was continuing to treat for his injuries and had been seen by new medical

---

[2] The joint motion also requested only a thirty-day extension for motions related to discovery. Connecting the dots, the Court assumes that this discrepancy between the ninety-day request in the introductory paragraph of the joint motion, and the thirty-day extension dates for expert disclosures and motions related to discovery, is the seed out of which Defendants' later opposed extension motions (Docs. 231, 254) grew. Other requested extensions were more in line with the introductory paragraph's ninety-day request, including a seventy-seven day extension for supplemental disclosures (to November 11, 2024), and a full ninety days for completion of all discovery (January 14, 2025), and dispositive/*Daubert* motions (February 4, 2025). *See* (Doc. 209).

providers since the original expert deadline was set; (3) Plaintiff's counsel had a trial conflict in July limiting her availability during the discovery period; (4) Defendants had requested Plaintiff undergo a Rule 35 neuropsychological examination; and (5) the parties anticipated the filing of discovery motions, such as motions to compel and motions for a protective order, on which the Court would need to rule. (*Id.* ¶¶ 13-16).

The Court's granting of the July 17, 2024 unopposed extension motion was followed by a flurry of contested motions, including: (1) a motion by P.A.M. Transport on July 22, 2024 for a protective order from what P.A.M. Transport claimed (and the Court later found) was an overly broad Rule 30(b)(6) deposition notice (Doc. 211, Doc. 280); (2) an expedited motion by Defendants on August 5, 2024 seeking to compel a neuropsychological examination of Plaintiff pursuant to Federal Rule of Civil Procedure 35 (Doc. 216)[3]; (3) a motion on August 12, 2024 by Plaintiff seeking protection from certain aspects of Defendants' proposed Rule 35 examination (Doc. 220); and (4) a motion by Defendants on August 22, 2024 seeking an extension of the LR-Civ. 26.6 deadline (Doc. 231).

On August 21, 2024, the Court granted in part Defendants' motion to compel and Plaintiff's motion for a protective order, and directed the parties to promptly confer concerning a date and time for the Rule 35 examination. (Docs. 229, 230). On September 17, 2024, the Court held a telephonic status conference to address an urgent dispute that had arisen concerning the Rule 35

---

[3] The purpose of the Rule 35 examination was to "assess the permanency of [Plaintiff's] injuries and determine the likelihood that those injuries are the result of the parking lot accident, as opposed to previous injuries or comorbidities." (Doc. 216 at 2). Defendants had been trying to schedule the Rule 35 examination since late June 2024. *See* (Doc. 216-1). Plaintiff did not oppose the Rule 35 examination, but efforts to reach agreement over its timing, location, and parameters, *see* (Doc. 216-2), were ultimately unsuccessful, necessitating Court intervention.

examination. The Court directed the parties to proceed with the Rule 35 examination. (Dkt. Entry # 243), which took place the following day, on September 18, 2024, *see* (Doc. 249 ¶ 14).

Meanwhile, on September 2, 2024, Plaintiff served Defendants with his expert disclosures, *see* (Doc. 234), which apparently designated four expert witnesses: Ron Feder, Mary Solerno, Michael Freeman, and Adam Grill. *See* (Doc 249, ¶ 11). The docket also indicates that between September 17 and September 21, 2024, Defendants noticed the depositions of a number of Plaintiff's treating physicians, as well as at least two of Plaintiff's retained experts.[4]

On September 20, 2024, Defendants filed a "Motion To Extend Deadlines," stating in the introductory paragraph that "*[t]he parties* seek a sixty (60) day extension for the current deadlines," and referencing the Court's last extension order entered on July 17, 2024. (Doc. 249 at 1 (emphasis added)). The Court's July 17, 2024 extension order provided that Defendants' expert disclosures were due by October 2, 2024, so a sixty-day extension would have extended that date to December 2, 2024, the same date Defendants seek with the current Motion. The September 20, 2024 motion cited the following matters as good cause for the requested extensions:

    (1)    Plaintiff was exploring a neck/brain implant and surgical intervention.

    (2)    The parties have discovery motions pending on both sides.

---

[4] *See* (Doc. 236 (Adam Grill, C.D.S.); Doc. 237 (Darren Buono, M.D.); Doc. 244 (Hector Miranda-Grajales, M.D.); Doc. 245 (Dr. Allan M. Block, M.D.); Doc. 247 (Mary Salerno); Docs. 251, 257 (C. Terrell Cummings, M.D.); Doc. 252 (Athanasios Manole)). These filings notifying the court that deposition notices had been served were made before the Court called the parties' attention to D.N.M. LR-Civ. 30.1, which directs that notices or certificates of service regarding depositions are not to be filed except in connection with a motion relating to the deposition. *See* (Dkt. Entry # 278). Plaintiff, however, has ignored the Court's direction and continues to file certificates of service related to depositions in violation of the Local Rules. *See, e.g.,* (Docs. 284, 287). "The District's Local Rules of Civil Procedure are not suggestions; local rules 'exist to create order out of chaos. Therefore, it is imperative that those rules be followed.'" *Flynn v. City of Las Cruces, N.M.*, No. CV 15-00195 KG/WPL, 2016 WL 10565474, at *1 (D.N.M. May 31, 2016) (quoting *McDougal v. G & S Tobacco Dealers, L.L.C.*, 712 F. Supp. 2d 488, 501 (N.D.W. Va. 2010)).

(3)    The parties have depositions scheduled (or in the process of being scheduled) for Plaintiff's four expert witnesses.

(4)    The parties have depositions scheduled (or in the process of being scheduled) for eight treating physicians (Cornell Cummings, M.D., Darren Buono, M.D., Athanasios Manole, M.D., Valerie Rundle Gonzales, M.D., Hector Miranda, M.D., Adam Di Dio, M.D., Allen Block, M.D., and Judson Cook, M.D.).

(5)    The parties had not yet been able to secure dates, and were continuing in their efforts to do so, for the depositions of Richard Bozeman, DC, James Yates, M.D., and Rachel Nordmeier, PA.

(6)    Plaintiff's Rule 35 examination had just taken place and Dr. King, the Rule 35 examiner as well as Defendants' retained expert, needed time to interpret the results and prepare his report.

(7)    It was anticipated that Plaintiff would want to depose Defendants' experts.

(8)    The parties had encountered delay in locating and deposing Plaintiff's direct supervisor, Christian Hernandez.

(9)    Most of the agreed deposition dates were *after* the expert disclosure and supplementation deadlines in place at the time.

(10)   No trial date had yet been set.

(11)   The requested extensions would not prejudice any party.

(12)   The motion was unopposed.

*Id.* ¶¶ 9-21; *see id.* at 4 (noting Plaintiff's counsel's approval by email dated September 20, 2024).

Despite discussing the need for an extension to allow Dr. King sufficient time to prepare his Rule 35 examination report, the September 20, 2024 unopposed motion proposed extended dates for all unexpired deadlines *except* Defendants' expert report deadline. The reason for this omission is obvious from the parties' subsequent filings whereby it became apparent that Plaintiff would not agree to an extension of Defendants' expert disclosure deadline. Thus, to obtain a sixty day extension for all outstanding deadlines, Defendants had to file two motions: the motion on September 20, 2024 (Doc. 209) to which Plaintiff agreed, and the disputed Motion on September 23, 2024 (Doc. 254), which is currently before the Court.

Defendants filed the current disputed Motion more than a week before the October 2, 2024 deadline expired, and therefore the deadline was automatically stayed pending the Court's ruling on the Motion. *See* (Dkt. Entry # 277). Then, on the actual October 2, 2024 deadline, Defendants served Plaintiff with an expert witness disclosure identifying five experts: (1) Dean L. Davidson, B.S.M.E. P.E.; (2) Jason S. Taub, M.D.; (3) Matthew D. Mecham, M.S., P.E.; (4) William D. Zimmer, M.D.; and (5) John H. King, Ph. D., MSCP, ABPP. Defendants also produced at that time the resumes, fee schedules, and testimony logs for those experts. *See* (Doc. 254 at 1; Doc. 279). Accordingly, the current Motion seeks an extension only for purposes of delivering each expert's written report. *See* Fed. R. Civ. P. 26(a)(2)(B) (setting forth the written report requirement for witnesses who are "retained or specially employed to provide expert testimony in the case"). Defendants cite a number of reasons why they need an additional sixty days for their experts' reports, including:

(1) The fact that Defendants have been unable to secure deposition dates for a large number of Plaintiff's treating physicians.

(2) Similar delays in Defendants' ability to schedule the depositions of Plaintiff's retained experts.

(3) Delay Defendants have experienced in the scheduling of a Rule 35 examination of Plaintiff by Defendants' retained neuropsychologist, John H. King. Ph. D.

(4) Difficulties Defendants have experienced in obtaining Plaintiff's medical records, billing records, and diagnostic imaging from two medical providers (Dignity Health Arizona General Hospital and MRI Centers of Texas).

(5) A dispute with Plaintiff over the form in which certain imaging records have been transmitted to Defendants' experts.

(Doc. 254).

Plaintiff not only opposes the current Motion for lack of good cause, but goes even further in arguing that Defendants' Motion is sanctionable under Federal Rule of Civil Procedure 11.

Plaintiff asserts the Motion is sanctionable because: Defendants filed the Motion without conferring with Plaintiff; the Motion "is ripe with misinformation and inaccuracies"; and "[t]he timing and content of Defendants' motion suggest that it has been filed for the improper purpose of causing delay, increasing Plaintiff's litigation costs, and gaining an unfair advantage in the discovery process." (Doc. 261 at 13-14).

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 16(b)(4) provides that scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In making a good cause finding under Rule 16(b)(4), the court may consider matters such as whether the need for more time was foreseeable, prejudice to the nonmoving party, whether the party seeking additional time has acted in bad faith, and whether "refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (internal brackets and quotations omitted) (quoting 3 Moore's Federal Practice – Civil § 16.14[1][b] (3d ed. 2019)); *see also Colorado Visionary Acad. v. Medtronic, Inc*., 194 F.R.D. 684, 687 (D. Colo. 2000). But the primary consideration for the court is the diligence of the party seeking extension. *See Heuskin v. D&E Transp., LLC*, Civ. No. 19-957 MV/GBW, 2020 WL 5367027, at *4 (D.N.M. Sept. 8, 2020) (citing, inter alia, *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014)); *Candelaria v. Molina Healthcare, Inc*., No. CV 18-725 WJ/GBW, 2019 WL 4643946, at *3 (D.N.M. Sept. 24, 2019) (citing cases); *see also Tesone*, 942 F.3d at 988 ("Good cause is likely to be found when the moving party has been generally diligent …."); *Pumpco, Inc. v. Schenker Int'l, Inc.,* 204 F.R.D. 667, 668 (D. Colo. 2001) ("Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts.").

**DISCUSSION**

A.    **DILIGENCE ISSUE**

    1.    **INABILITY TO SCHEDULE DEPOSITIONS OF TREATING MEDICAL PROVIDERS**

Plaintiff argues that Defendants' "inability to schedule depositions or gather the necessary records before the current deadline is a direct result of their own failure to pursue discovery with adequate speed." (Doc. 261 at 2). But there is nothing in the record of which the Court is aware that would support that statement. The record shows that Plaintiff did not disclose the names of some of his treating medical providers until March 22, 2024 (Doc. 216-4); *see also* (Docs. 195, 196). Defendants requested to depose those providers at least by June 28, 2024 (Doc. 254-1 at 2), and again on July 8, 2024 (Doc. 254-2 at 2). In raising the issue of deposition dates in the summer of 2024, Defendants were complying with this Court's Local Rules, which provide that "[c]ounsel must confer in good faith regarding scheduling of depositions before serving notice of deposition." D.N.M. LR-Civ. 30.1. Defendants contend (Doc. 264 at 2-3)—and Plaintiff does not dispute—that Plaintiff's counsel refused to allow Defendants to contact the treating physicians directly to try to schedule their depositions earlier in the summer.[5] And the record also indicates that Plaintiff's counsel had a trial conflict in July limiting her availability during that month to conduct depositions in the present case.

Plaintiff ignores these facts and instead focuses on the wrong issues. For instance, Plaintiff argues that Defendants knew since July 12, 2024 that their expert witness disclosures were due by October 2, 2024, yet they "failed to secure the necessary dates in a timely manner." (Doc. 261 at

---

[5] Plaintiff's counsel states that she gave Defendants permission to set up the deposition of one treating physician, Dr. Bozeman, due to the challenge encountered in coordinating with his office, but she indicates that this did not occur until August 13, 2024. (Doc. 261 at 3-4).

10

2). Diligence, however, means that the party requesting an extension "must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (unpublished) (citing *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)). Foreseeability may be relevant to that inquiry, where, for instance, the delay in question could have been avoided with reasonable efforts. But it makes little sense to say that diligence is negated by the fact that the need for an extension was foreseeable if the delay remains unavoidable. *See Walker v. THI of N.M. at Hobbs Ctr*., 262 F.R.D. 59 9, 602 (D.N.M. 2009) (rejecting the defendant's argument that the plaintiff "knew she would be having surgery before the deadlines in the Scheduling Order were set" and therefore her need for surgery was not good cause to extend the deadline). Failing to act sooner on a foreseeable extension could affect a party's ability to obtain an extension even though the reason for the delay was unavoidable *if* the party waited until after the deadline expired to move for an extension.[6] But that did not occur here.

Although Plaintiff does not fully explain his foreseeability argument, the Court assumes he has in mind that Defendants should have known they would not be able to meet the October 2, 2024 deadline at least by mid-August when they filed the motion to compel a Rule 35 examination. Defendants also knew at that time that an agreement had not been reached with the opposing side for many of the still outstanding treating physicians' depositions. Indeed, they likely anticipated the need for an extension as early as mid-July, as shown by the fact that their unopposed motion

---

[6] *See City of Las Cruces v. Lofts at Alameda, LLC*, No. CV 17-809 JCH/GBW, 2023 WL 2366760, at *3 (D.N.M. Mar. 6, 2023) (stating that the defendant "must show not only 'good cause' for the Court to modify the scheduling order, Fed. R. Civ. P. 16(b)(4), but also that its failure to substitute its expert before the deadline is attributable to 'excusable neglect,' Fed. R. Civ. P. 6(b)(1)(B)"), *report and recommendation adopted*, No. CV 17-809 JCH/GBW, 2023 WL 6370778 (D.N.M. Sept. 29, 2023); *Aguirre v. Atrium Med. Corp.,* No. CV 18-153 DHU/GBW, 2022 WL 16714263, at *2 (D.N.M. Nov. 4, 2022) (citing cases for the proposition that where a plaintiff's expert disclosures deadline passed before it filed its motion for an amended scheduling order, both the "good cause" and "excusable neglect" standards apply).

requested a ninety-day extension for all deadlines in the introductory paragraph, which somehow got shortened to thirty days for the expert disclosure deadlines. Or, they might have instead been caught off guard when, on September 20, 2024, Plaintiff agreed to an extension of all the unexpired deadlines except Defendants' expert disclosure deadline. In any case, none of those possibilities means Defendants were *careless* in seeking discovery in that time period, which is the standard to be applied in assessing a request to modify a scheduling order deadline. *See Tesone,* 942 F.3d at 989 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief," and "[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation also should not be considered good cause" (internal quotation marks and citations omitted)).

Plaintiff also avoids discussing Defendants' inability to schedule depositions throughout the summer of 2024, suggesting that Defendants were not diligent because they failed to depose all of the outstanding treating physicians in the time period between August 8, 2024 and October 2, 2024.[7] Plaintiff points to his counsel's August 8, 2024 email providing potential deposition dates for seven treating physicians ranging from August 16, 2024 to November 1, 2024. (Doc. 261-1 at 1). He then points to a chart of available deposition dates for five treating physicians sent by his counsel on September 4, 2024 (Doc. 261-3), which his counsel claims to have updated on September 5, 2024 (Doc. 261-4), which was again updated on September 10, 2024 (presumably to reflect scheduling conflicts and availabilities) (Doc. 261-5), and again on September 18, 2024 (Doc. 261-6). But these offerings were very last-minute given the number of depositions that needed to be scheduled and Defendants' October 2, 2024 expert disclosure deadline. Plaintiff has

---

[7] Alternatively, Plaintiffs appear to be arguing that it is irrelevant that Defendants could not schedule all of the depositions in question in that time period because of their ability to supplement their expert reports, an argument the Court will address later in this opinion.

not shown that Defendants' failure to schedule the depositions of treating physicians in time to meet the October 2, 2024 was the result of their own lack of diligence as opposed to Plaintiff's delayed response to their scheduling inquiries made months earlier.

In any event, if the Court were to myopically focus on Defendants' diligence in the time period beginning in August 2024, the Court still would not be persuaded by Plaintiff's lack of diligence argument. Defendants argue that many of the dates offered in August did not work out because they failed to accommodate or account for in-person attendance, as Defendants had requested. (Doc. 264 at 4 ("Provider dates [in August] were not ignored, as suggested by Plaintiff"; they were simply "unworkable due to travel considerations and other settings.")). And the later charts sent by Plaintiff's counsel in September suggested depositions dates for treating providers starting around October 2, 2024 and continuing through December 6, 2024. All of these proposed dates were *after* Defendants' expert witness disclosure deadline. Citing the August and September emails and charts, Plaintiff asserts that his counsel has been diligent in providing Defendants with deposition availability for Plaintiff's treating providers, and that "Defendants' accusations [to the contrary] … are baseless and an attempt to manufacture grounds for extending their expert disclosure deadline." (Doc. 261 at 3). The issue, however, is not whether Plaintiff's counsel has been diligent, but whether Defendants, as the parties seeking an extension, have been diligent. Accordingly, the Court does not need to, and will not, weigh in on Plaintiff's counsel's diligence in cooperating with deposition scheduling, other than to point out that the cooperation cited by Plaintiff began in August 2024 and did not reach what one might call "full" cooperation until September 2024. Assuming Plaintiff's counsel was diligent in waiting until September to offer deposition dates, the fact remains that there simply was not enough time after coordinating the

schedules of all interested parties to reach agreements for specific dates *prior to* October 2, 2024, which is when Defendants' expert reports were due.

### 2.    RULE 35(b) EXAMINATION DELAY

In addition to the above, the Court agrees with Defendants that delay in the Rule 35(b) examination provides additional support for a good cause finding to extend Defendants' expert reports deadline. Plaintiff opposed Defendants' efforts to schedule a Rule 35 examination, and, because of that dispute, the examination did not occur until September 18, 2024, leaving less than two weeks before Defendants' expert disclosures were due on October 2, 2024. The Court is astonished by Plaintiff's assertion in his response brief that "Defendants have only themselves to blame for scheduling this examination at the last possible moment, with only nine business days remaining before their expert disclosure deadline." (Doc. 261 at 12). Plaintiff's objections to the examination, which prevented it from taking place earlier, are well documented. Ordinarily, the Court would simply ignore such a disingenuous argument. But in this case, Plaintiff is both asserting a completely unsupportable position while at the same time arguing for Rule 11 sanctions against Defendants for what Plaintiff claims are bad faith arguments in support of Defendants' Motion. The Court finds all of Defendants' arguments for an extension in the Motion well taken, or, at the very least, none are as lacking in candor as Plaintiff's argument about the Rule 35 examination.

As further evidence of the wholly unjustified position Plaintiff is taking on the current Motion, the Court points to the fact that Plaintiff *joined in* Defendants' September 20, 2024 extension motion, which includes the statement that "Plaintiff Booker's Rule 35 Exam was on Wednesday, September 18 and John King, M.D. needs time to interpret the results and prepare his report." (Doc 249 ¶ 14). The Court can conceive of no good faith basis for Plaintiff to argue against

there being good cause *at the very least* for an extension of the deadline for Dr. King's expert report when he *agreed* in the September 20, 2024 motion that the late date of Dr. King's examination was good cause for an extension of *every other* deadline in the case.[8]

### 3.    UNEQUAL ACCESS TO EVIDENCE

Given Plaintiff's agreement with the good cause cited in the September 20, 2024 extension motion, it is apparent that the only reason for Plaintiff's withholding of consent to an extension of Defendants' expert report deadline is the fact that, unlike in previous joint extension motions, this time Plaintiff did not need a mutual extension of his expert disclosure deadline. But that position would be purely strategic, having nothing to do with the legal standard for granting an extension of a scheduling order deadline. Plaintiff's ability to meet his own expert disclosure deadline does not negate the possibility that Defendants were diligent with respect to their expert disclosure deadline yet still unable to meet it without an extension. Unlike Defendants, Plaintiff's experts did not need discovery from the opposing side to prepare their opinions regarding Plaintiff's medical condition. They had unrestricted access to whatever medical records or examinations of Plaintiff they needed to prepare their reports. It is precisely the unequal access to evidence concerning Plaintiff's medical condition that warrants a good cause finding to enable Defendants to overcome discovery obstacles that may be standing in the way of their ability to gather the evidence their experts might need for preparing their opinions regarding Plaintiff's medical condition.

------

[8] Of course, practically all of the matters cited in the September 20, 2024 *unopposed* extension motion are good cause for extending Defendants' expert disclosure deadline as well, including but not limited to the statements that "[m]ost of these depositions are scheduled after the expert disclosure and supplementation deadline" (Doc. 249, ¶ 17), and "[g]iven these the [sic] amount of pending depositions and changing medical trajectory, the required work and cannot be performed by the current case deadlines" (*id.* ¶ 18). It is difficult to see how a logical argument exists for a finding of good cause due to outstanding depositions for every other deadline in the case but not for Defendants' expert report deadline.

Plaintiff does not dispute that the scheduling delays discussed in Defendants' Motion have in fact occurred. Nor does Plaintiff dispute that the discovery in question is important to Defendants' expert witnesses in preparing their reports.[9] Instead, Plaintiff's response to these circumstances is to argue that Defendants can simply rely on the supplementation deadline to update their expert reports once the fact depositions are completed. Plaintiff cites no case law to support that argument.[10] "Supplementation under the Rules means correcting inaccuracies, or

---

[9] Defendants have not provided the Court with much background regarding the topics on which their experts, other than their neurological expert Dr. King, are expected to opine. Such background is necessary to determine whether the outstanding depositions relate to those topics and therefore would be important factual information for the experts to have in their possession before preparing their reports. But the nature and extent of Plaintiff's injuries from the accident appear to be the most contentious issues in the case and also the issues for which expert testimony would be necessary. It is therefore logical to assume that most if not all of Defendants' experts were retained to opine on those topics. And since a large number of the outstanding depositions are of treating physicians, it is also reasonable to assume that at least some of those depositions will contain factual information on which Defendants' experts will be relying in preparing their reports. *See* (Doc. 264 at 2 (stating that the medical providers yet to be deposed include the first three providers to see Plaintiff after the accident, and that their testimony was expected to be "particularly significant because they observed Plaintiff [ ] closest in time to the accident, when his 'brain injury' symptoms would presumably have been at their worse")). Plaintiff asserts that "Defendants have not shown that the deposition testimony they are awaiting is critical to the preparation of their experts' initial reports," but his argument is not that the testimony of treating physicians is outside the scope of the anticipated expert opinions. Rather it is that Defendants should make do with "medical records, reports, and other discovery already available." (Doc. 261 at 8). Expert medical testimony is critical to cases involving allegations of a traumatic brain injury such as the present one, and the plaintiff in such a case should not be permitted to dictate to his opponent what evidence his opponent's experts can do without in preparing their opinions.

[10] That statement is not entirely accurate. Plaintiff asserts that "the Tenth Circuit has noted [that] scheduling difficulties alone do not constitute good cause for extending a deadline when the party has the option to supplement or amend their disclosures later," and cites *Pulsecard, Inc. v. Discovery Card Servs. Inc.*, 168 F.R.D. 295, 301 (D. Kan. 1996), in support. (Doc. 261 at 5). But as far as the Court can tell, *Pulsecard, Inc.* does not speak to the proposition for which it is cited. Plaintiff later asserts, this time without *any* citation, that it "is common practice in federal litigation" to require a party to meet the deadline and amend their expert reports as necessary once depositions are completed." (*Id.*). Later still in his response, Plaintiff returns to the issue and cites a Fifth Circuit case that supposedly holds that "supplementation is the appropriate mechanism for updating expert reports, rather than extending the deadline for initial expert disclosures." (Doc. 261 at 7)). But the cited case, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546 (5th Cir. 1996), actually states the opposite; that is, the Fifth Circuit quoted the standard for expert

filling the interstices of an incomplete report based upon information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont.1998). "It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court." *Carter v. Finely Hospital*, No. 01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003); *see also Coles v. Perry*, 217 F.R.D. 1 (D.D.C. 2003) (noting that the objectives underlying Rule 26(a)(2)(B) would be nullified if an expert was permitted to "supplement" an earlier report by addressing a new matter after discovery has closed). Plaintiff also asserts that "similarly, [he] has yet to take the deposition of party Defendant PAM" (Doc. 261 at 5), when the two situations do not appear to

---

reports now codified in Rule 26(a)(2)(B)(i), which provides that a retained expert witness report must provide "a *complete* statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii) (emphasis added); *see* 73 F.3d at 570-71. As the Fifth Circuit further explained: "Although Cedar Point later reinforced these statements [of its experts made in their original reports] with rebuttal and supplementary disclosures, the discovery order and Rule 26(a) clearly require that *the initial disclosures be complete and detailed*. The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." 73 F.3d at 571 (emphasis added). Not satisfied with only these misstatements and misrepresentations of the case law, Plaintiff returns to the supplementation issue once again a few more pages along in his response, this time citing a Tenth Circuit case—*Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002). But Plaintiff misrepresents the holding of *Jacobsen* as well. The Tenth Circuit held in that case it was error for the district court to allow the defendants' expert witnesses to testify at trial when the defendants acknowledged that the experts' written reports were "preliminary and incomplete," and therefore, according to the court, violated Rule 26(a)(2)'s completeness requirement. *Id.* at 952-53. Further, the court rejected the argument that the defendants' failure to comply with the requirements of Rule 26(a)(2) was excused by the plaintiff's failure to provide discovery. *Id.* at 954 ("[A] court should not excuse non-compliance with Rule 26 by one party for the reason that the other party may not have fully complied with discovery requests. … If [the defendants] thought [the plaintiff] had unfairly avoided discovery their recourse was a motion to compel." (internal quotation marks and citations omitted)). In this case, Defendants followed the appropriate course when faced with not having complete information on which to base their expert reports, which was not to produce incomplete reports that would violate Rule 26(a)(2)(B)(i) and rely on supplementation down the road, but to move for an extension of the disclosure deadline and seek the necessary information through discovery and/or motions to compel.

be similar. Plaintiff's treating medical providers are obviously the source of "facts" in the case of the type that Defendants' experts likely will need to rely in forming their opinions. On the other hand, Plaintiff has not argued, or moved for an extension of any deadlines based on an argument, that one or more of his experts needs information expected to be provided at P.A.M. Transport's Rule 30(b)(6) deposition.

Beyond the fact that Plaintiff fundamentally misconstrues the idea of "supplementation" under Rule 26, Defendants' experts are *entitled* to know the facts *before* they form their opinions. Defendants cannot be expected to produce expert reports when relevant fact discovery is still on-going. For this reason, it is common for some courts to stage discovery in two phases: fact discovery first, followed by expert discovery. One disadvantage to doing so, however, is that disputes can arise over whether particular discovery requests constitute fact or expert discovery, leading to additional motions practice. *See, e.g., Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2014 WL 576400, at \*4 (S.D. Ohio Feb. 12, 2014). This Court typically will follow whichever approach the parties request in their joint scheduling report. But the fact that a scheduling order does not provide for separate fact and expert phases of discovery does not mean a party *must* prepare his expert reports even if necessary fact discovery has not yet been completed. Expert opinion testimony must be based on facts or data in the case, *see* Fed. R. Evid. 703, and those facts or data need to be developed through fact discovery before expert reports are prepared. *See, e.g., Sparton Corp. v. United States*, 77 Fed. Cl. 10, 14 (2007) (explaining that "expert opinions are to be distinguished from the facts upon which they rely," and "experts … should know[ ] all the facts before setting out their opinions in expert reports"; to ensure this result, parties should be allowed "to investigate, completely, all 'facts' before [they] proceed[ ] to [or are required to conduct] expert discovery" (quoting *Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583, 584 (2000)).

Plaintiff argues that allowing Defendants to extend their expert report deadline due to outstanding fact depositions of treating physicians "would incentivize parties to delay depositions in order to extend their own disclosure deadlines." (Doc. 261 at 6). That argument makes little sense. The incentive *not* to delay fact discovery exists from the relationship between fact discovery and expert reports as discussed above. If fact discovery the expert needs to form his opinion is not yet available, then the expert cannot prepare his written report. Plaintiff does not explain why a party would want to extend their disclosure deadline other than that fact discovery his expert needs has not occurred. The Court is much more concerned with creating an incentive for a party with exclusive control over the relevant facts to use that control to prevent timely discovery and thereby disadvantage the opposing side. In any event, to the extent that such an incentive might exist, it is adequately addressed by requiring the party seeking the extension to show he has been diligent.

### 4. INABILITY TO SCHEDULE DEPOSITIONS OF PLAINTIFF'S EXPERTS

Without placing too great an emphasis on the point, Defendants also mention their inability to schedule the depositions of Plaintiff's four experts as a reason to extend their own expert report deadline. Plaintiff asserts that Defendants have not shown why the depositions of Plaintiff's experts must occur before Defendants' expert disclosures." (Doc. 261 at 6). Defendants, on the other hand, argue that Plaintiff's counsel has been taking strategic advantage of the fact that this Court does not have a standing rule mandating that experts must be ready to be deposed following disclosures. Defendants observe that the absence of a rule requiring that experts be made available for depositions immediately after their reports are delivered does not mean that a party can refuse to provide deposition dates when requested to do so. The Court agrees. Defendants have shown with correspondence submitted with the briefing that, as far back as March 7, 2024, they sought to reserve time for the depositions of Plaintiff's experts in the period between Plaintiff's disclosures

and the due date for Defendants' disclosures. Defendants repeated this scheduling request in June 2024, and again after Plaintiff made his expert disclosures in September 2024. Plaintiff's counsel responded to the most recent request by stating that she could not accommodate deposition dates in the month between when Plaintiff's disclosures were made and when Defendants' disclosures were due. When Defendants pointed out that they had requested multiple times and over the course of many months that Plaintiff reserve availability for those depositions in that time-period, Plaintiff's counsel stated that "we had no obligation to disclose our experts or provide deposition dates prior to our expert disclosure deadline." (Doc. 254-9).

The Advisory Committee Notes to Rule 26 state that "in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." Fed. R. Civ. P. 26, Advisory Committee Notes to the 1993 Amendments. It is generally expected that a plaintiff, as the party bearing burden of proof, would present his experts' opinions before the defendant is required to disclose his expert, since a defendant's expert typically (though not always) is presenting rebuttal opinions. *See generally Mabrey v. United States,* No. 2:05-cv-51-RLH-GWF, 2006 WL 1891127 (D. Nev. July 7, 2006). For this same reason, it is normal (though not necessarily required) that a plaintiff's expert witness also be deposed before the defendant makes his own expert disclosures. *See, e.g., White Way, Inc. v. Firemen's Ins. Co. of Wash. D.C.,* No. 22-2195-KHV-RES, 2022 WL 17177371, at *3 (D. Kan. Nov. 23, 2022) (finding that the plaintiff's motion "cannot be fairly construed as requesting leave for just the disclosure of untimely expert reports," because the plaintiff "did not file its [m]otion until *after* Defendant served its expert reports, meaning that Defendant did not have the chance to review Plaintiff's expert reports and depose Plaintiffs' experts on those reports prior to disclosing its own experts" (emphasis in original)).

20

It makes sense to allow a defendant to fully explore the plaintiff's expert's theories through a deposition before making his own disclosures. *See Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, No. C 01-20418 JW, 2005 WL 1459572, at *2 (N.D. Cal. June 21, 2005) (noting that "to respond to [plaintiff's expert's] theories, Defendants expert must know of them in advance"). Scheduling and other issues may prevent an expert's deposition from occurring prior to the defendant's disclosure deadline, and that situation might not always be a reason to extend the latter's deadline. But here Defendants requested early on that Plaintiff's counsel hold open deposition dates for Plaintiff's experts after Plaintiff made his disclosure and before Defendants' rebuttal disclosures were due. There does not appear to be any reason other than to strategically disadvantage Defendants for Plaintiff to not have accommodated this reasonable request. A party's refusal to accommodate a scheduling request for purely strategic reasons (as opposed to demonstrated inability), is good cause for an extension of the opposing party's disclosure deadline, both to avoid undue prejudice to the party presenting rebuttal expert testimony and to discourage counsel from engaging in gamesmanship like conduct. *See, e.g., Plumbers & Pipefitters Loc. 572 Pension Fund*, 2005 WL 1459572, at *2 (finding that Defendants would be prejudiced by having "to respond to all of Plaintiffs'' possible theories of liability rather than focus on theories relied upon by Plaintiffs' experts").

## 5. DISPUTES OVER MEDICAL RECORDS

Finally, the Court declines to address Defendants' arguments concerning missing medical records, bills, and imaging from two health care facilities or their dispute concerning the form in which Plaintiff has provided certain imaging to Defendants. The Court finds that good cause for the requested extension has already been shown based on the previously discussed factors, and that the dispute about medical records is both undeveloped (although discussed in greater detail in

Defendants' reply brief) and not properly presented to the Court in briefing on an extension motion (as opposed to a motion to compel).[11]

### B.  PREJUDICE INQUIRY

Plaintiff argues that granting Defendants' Motion will prejudice Plaintiff by delaying the litigation process, but he offers no explanation for that statement. *See* (Doc. 261 at 5). As far as the Court can tell, granting Defendants the requested extension will not affect any other deadlines, which were already extended by agreement to January 10, 2025 for supplementation of discovery; March 31, 2025 for discovery motions; March 31, 2025 for all discovery; and April 7, 2025 for all other motions/*Daubert* motions. (Doc. 255). Plaintiff asserts, again without further explanation. that granting Defendants the requested extension for their expert reports "would effectively push the case timeline into late 2025 or 2026." (Doc. 261 at 9). But why? Under current deadlines, Plaintiff will have almost *four months* after Defendants' expert reports are delivered and before the current discovery deadline expires to depose Defendants' experts. All, or nearly all, other discovery should be completed before the expert reports, including depositions of Plaintiff's experts, which were disclosed months ago and should have already been deposed by the time this opinion gets entered. To the extent that Plaintiff may want to offer either rebuttal or supplemental

---

[11] However, the Court notes that Plaintiff represents that he has already agreed to provide updated medical releases. Therefore, if he has not yet given those releases to Defendants, he should do so immediately (and no later than five business days after entry of this opinion). Plaintiff also is reminded of his discovery obligations, and that he cannot refuse to provide medical records, including imaging, already in his possession or the possession of one of his agents such as an attorney or expert witness. He has a duty to produce those records upon request. Even if he thinks Defendants have obtained a copy directly from the provider, and, notwithstanding his execution of medical releases, he cannot simply instruct Defendants to obtain the records directly from the provider if the easier route is to provide Defendants with copies of records already in his possession. Doing so, however, does not relieve him of the obligation to execute the medical releases, as Defendants also have the right to confirm from the providers that all records have been obtained.

expert testimony to Defendants' expert reports, the current deadlines accommodate that too. No trial date has been set for the case, and the requested extension should also not delay the current dispositive motions deadline.

Plaintiff complains that the extension, if granted, will "drag[] out discovery." But discovery has already been "dragged out," primarily by delays in scheduling the depositions of Plaintiff's treating physicians, which Plaintiff has not and cannot show were the result of Defendants' bad faith (as opposed to scheduling issues). Plaintiff's prejudice arguments are so conclusory and unsupportable given the current deadlines to which his counsel agreed in September 2024 that Plaintiff's assertion that Defendants are "attempt[ing] to strategically delay the proceedings" (Doc. 261 at 5) seems more like projection than anything else to the Court.

Plaintiff asserts that if the Court grants Defendants' a sixty-day extension for their expert reports, "then all deadlines should be extended as such so as to not offer an unfair advantage to one party that the other has not received." (*Id.* at 5). But Plaintiff does not say either what the "unfair advantage" consists of, or why he would need an extension of any other deadline, only that he is entitled to some sort of "mutual extension which Defense has objected to." (*Id.* at 8). As has been noted a number of times, a sixty-day extension *was already granted* as to all other unexpired deadlines. Granting Defendants' Motion simply extends the same sixty-day extension for the one deadline omitted from the most recent joint extension motion. Discovery is not due to close until March 31, 2025, with supplements due on January 10, 2025, which should be more than sufficient time to complete any remaining depositions and/or deliver any needed expert rebuttals or supplements. If an extension of any deadline were to become necessary, it can be addressed at that time by the filing of an appropriate motion.

### C.    RULE 11 ARGUMENT

Plaintiff's sanctions arguments fall woefully short of establishing that counsel for Defendants violated Rule 11 by filing the present Motion. To comply with Rule 11, a motion must be "well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and ... not interposed for any improper purpose." *Predator Intern., Inc. v. Gamo Outdoor USA, Inc*., 793 F.3d 1177, 1182 (10th Cir. 2015). This memorandum opinion and order demonstrates that Defendants' Motion was warranted under both the facts and the law.

Plaintiff does not actually seek Rule 11 sanctions, likely because his counsel is well aware of the procedural requirements for such an award, which plainly have not been met here, including the filing of a separate motion and compliance with the safe harbor provision of Rule 11.1. For this reason, it is difficult not to conclude that Plaintiff's sole purpose in raising the Rule 11 issue in his response to Defendants' Motion was to cast aspersions on opposing counsel. Courts have said that a failure to comply with the procedural requirements for a Rule 11 motion might justify Rule 11 sanctions against the party moving for Rule 11 sanctions. *See Berg v. Frobish*, No. CV 12-1123-KHV, 2015 WL 8966960, at *1 (D. Kan. Dec. 15, 2015) (citing cases). Because Plaintiff has not moved for Rule 11 sanctions, that principle would not apply here. But a similar argument could be made for sanctions against a party who threatens a Rule 11 sanctions motion without a good faith basis in law or fact and with little intention of actually filing a Rule 11 motion. *See* Fed. R. Civ. P. 11(b)(1) (sanctions are warranted if a party or his counsel presents arguments "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"). Moreover, Plaintiff should keep in mind that even if the Court thought Defendants' counsels' conduct was questionable (which it does not), Plaintiff's counsel's conduct has been at

least equally culpable. *See, e.g., Pilone v. Basik Funding Inc.*, No. 05-3798 (AET), 2007 WL 203948, at *5 (D.N.J. Jan. 24, 2007) (overruling motion for Rule 11 sanctions where both parties failed to behave reasonably); *Kassner v. Ashley Plaza Mall Assoc.,* 758 F. Supp. 939, 941 (S.D.N.Y. 1991) (refusing to impose sanctions where counsel for both parties engaged in frivolous motion practice).

### D.    FUTURE DISCOVERY DISPUTES

The Court concludes by addressing Plaintiff's assertion that granting Defendants' Motion "would disrupt judicial economy" because it would "likely result in additional motion practice, including requests for further extensions, countenances of deadlines, and possibly even trial delays." (Doc. 261 at 9). The Court agrees the risk exists of further disruption of judicial economy along the lines Plaintiff suggests, but not as a result of granting Defendants' Motion. Indeed, the Court agrees with Defendants that if Plaintiff truly wants to expedite resolution and conserve judicial resources, his counsel should provide deposition dates for all medical providers and expert witnesses as well as any missing medical records, as soon as possible as opposed to devoting time and energy to further motions and unnecessary briefing.

This case has been plagued by discovery disputes from the start, with the first motion to compel filed a little over a month after discovery opened and at least eight more motions either seeking to compel or asking for protection from discovery filed thereafter. In an attempt to render any further extension requests and/or discovery motions unnecessary, and to ensure neither side is strategically refusing to cooperate in scheduling in hopes of forcing the other side into the position of needing a further extension, the deadline for Defendants' expert witness reports will be extended to the later of December 2, 2024, *or* fourteen (14) days after the deposition of the last fact witness whose testimony is necessary for any one of Defendants' experts to prepare his or her report, the

date on which Defendants obtain the medical records required for their experts, and/or the date on which the last of Plaintiff's experts is deposed.

In addition, to ensure that discovery is proceeding on pace and to head off any disputes that might lead to the filing of additional motions to compel, the Court will direct the parties to file a joint report on the status of discovery. The report should identify (1) the names of fact witnesses whose depositions have not yet taken place but are scheduled to occur on specific dates that have been confirmed with the deponent and counsel for both sides, stating what those dates are; (2) the names of fact witnesses whose depositions have not yet taken place and for whom there is not yet an agreed scheduled date for the deposition to occur, giving the reason(s) why a date has not yet been scheduled, with both sides providing suggested upcoming dates when they would be available for the deposition; (3) the same information for each of Plaintiff's expert witnesses who have not yet been deposed (agreed dates confirmed by the witnesses should be included for any such experts); (4) the status of Defendants' request for discovery concerning the missing medical records, billing records, and diagnostic imaging from Dignity Health Arizona General Hospital and MRI Centers of Texas; (5) the status of the parties' dispute over the form in which certain imaging records have been transmitted to Defendants' experts; (6) a statement as to whether any outstanding discovery dispute continues to impact Defendants' ability to prepare their expert reports; (7) any outstanding discovery the parties intend to conduct, including depositions of Defendants' experts, with scheduled or proposed deposition dates; (8) any other matter either party wishes to raise.

The parties should also state in their joint status report whether they believe the current scheduling deadlines (supplementation by January 10, 2025; discovery motions by March 31,

2025; close of discovery by March 31, 2025; and all other motions/*Daubert* motions by April 7, 2025 (Doc. 255)) can be maintained without further extensions, or else state why not.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants have been generally diligent with respect to their expert disclosure obligations; that extending the expert disclosure deadline will not prejudice Plaintiff; that Defendants have acted in good faith in seeking additional time; and that refusing to grant the requested continuance would create a substantial risk of unfairness to Defendants. Accordingly, there is good cause for the requested extension.

IT IS ORDERED that:

1.    Defendants' Expedited Motion To Extend Expert Report Deadlines For Defendants' Expert Witnesses (Doc. 254) is **GRANTED**.

2.    The deadline for Defendants' expert witness disclosures is **EXTENDED** as set forth above.

3.    The parties are directed to file a joint status report as outlined above on or before **November 25, 2024**.

4.    A telephonic status conference is set for **December 4, 2024 at 11:30 a.m.** to discuss the items in the parties' joint status report.

IT IS SO ORDERED this 4th day of November, 2024.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE