IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TANNER BOOKER,

    Plaintiff,

v.                                                    No. 2:23-cv-18 WJ/KRS

P.A.M. TRANSPORT, INC., and
IAN MURIUKI MWANGI,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on "Plaintiff's Emergency Motion For Protective Order To Prevent *Ex Parte* Communications With Plaintiff's Medical Providers" (hereinafter "Motion") (Doc. 297), filed November 8, 2024.[1] Defendants filed a Response on November 11, 2024 (Doc. 298), and Plaintiff filed a Reply on November 19, 2024 (Doc. 299). Defendants then obtained leave of Court for a Sur-Response, which was filed on November 20, 2024. (Doc. 305, 306). Having considered the parties' arguments, the record of the case, and the relevant law, the Court now DENIES the Motion and directs Plaintiff to show cause why Defendants should not be awarded their attorney's fees and costs incurred in responding to the Motion.

### Discussion

**A.**    **Introduction**

The Motion states that Plaintiff seeks an order to prevent Defendants from engaging in *ex parte* communications with Plaintiff's treating physicians. (Doc. 297 at 1). The Motion is styled as an "Emergency" because, according to Plaintiff, "Defendants have indicated their *imminent*

---

[1] Plaintiff is reminded that the Court modified the case caption to reflect the dismissal of P.A.M. Cartage Carriers, LLC (Doc. 114), and to use the modified case caption in future filings. *See* (Doc. 297 at 1; Doc. 298 at 1 n.1).

intention" to engage in such *ex parte* communication "[a]s part of the discovery process." (*Id.* (emphasis added)).

The Motion provides no details or surrounding circumstances of the supposed threatened "imminent" *ex parte* communications other than that they are "part of the discovery process." The specific reasons for, or anticipated substance of, the "imminent" *ex parte* communications are not set forth. The only additional hint as to the surrounding circumstances is one or two mentions that there is "no need for *ex parte* communication" because Defendants have already scheduled or are in the process of scheduling depositions of all treating providers. (*Id.* at 3); *see also* (*id.* at 4 ("[g]iven the pendency of depositions, this [i.e., *ex parte* communication] is unnecessary"). Based on this vague discussion of the factual basis for the Motion, the Court inferred that the reason for Defendants' threatened "imminent" *ex parte* communications with treating medical providers related to deposition scheduling, a topic this Court discussed at length in its recent opinion and order granting Defendants' motion to extend their expert reports deadline. *See* (Doc. 296). Defendants then confirmed the Court's understanding, when they argued in their Response that Defendants' counsel "seek *only* to have undersigned counsel's staff members contact the staff members of treating physicians in order to secure records/imaging and for routine administrative, billing and clerical purposes." (Doc. 298 at 1 (emphasis in original)).

The above assumptions went out the window, however, when Plaintiff filed his Reply. Plaintiff asserted in his Reply that "[t]he explanation Defendants provide in their Response as to how and why they want to contact Plaintiff's medical providers *ex parte* is *not why Plaintiff filed the motion*." (Doc. 302 at 1 (emphasis added)). This came as a surprise to the Court, given that there was no other explanation in the Motion itself, and that the explanation set forth in the Reply

2

was never mentioned even once in the Motion.[2] That explanation was a letter from Defendants' counsel to Plaintiff's counsel dated November 8, 2024 (discussed below). Before addressing the November 8, 2024 letter, however, the Court feels obliged to comment on Plaintiff's assertion in the Reply that the "imminent *ex parte* contacts" Plaintiff seeks to prevent have nothing to do with "standard discovery practices, such as serving HIPAA releases, coordinating deposition logistics, or paying fees." (*Id.* at 3). The Reply goes so far as to suggest that, even though the Motion provides no explanation, Defendants should have known Plaintiff was not seeking to prevent those types of routine administrative *ex parte* contacts because---according to Plaintiff--he "has *never objected* to such conduct and has actively encouraged the service of subpoenas to providers unresponsive to deposition requests." (*Id.* at 1 (emphasis added)). The assertion that Plaintiff has never objected to such conduct could be viewed as a deliberate attempt to mislead the Court (as Defendants argue it is) were it not so patently absurd that the Court could not possibly be deceived into believing it. As the Sur-Response amply demonstrates, Plaintiff's counsel's position in these proceedings has always been that Defendants' counsel may not contact any treating providers or their staff directly, even for routine administrative matters, and, instead, must contact them *exclusively* through Plaintiff's counsel's office. Indeed, as Defendants point out, that position is extensively documented throughout the record. *See* (Doc. 306 at 2 (with citations)). No amount of current back peddling by Plaintiff can alter this history.

Setting all that aside, it is clear that Plaintiff's Reply makes an entirely new argument for why a protective order against *ex parte* contact with treating providers is needed here. Plaintiff argues in the Reply that he does not seek a protective order from routine *ex parte* contact by

---

[2] For this reason, Defendants sought permission to file a sur-reply, which Defendants refer to as a "Sur-Response" instead, *see* (Doc. 306 at 1 n.1), presumably because the Reply reads as if it is a separate and distinct motion from the original Motion.

3

Defendants' counsel's staff with treating medical providers about administrative-type discovery matters, but instead seeks to prevent Defendants from engaging in *ex parte* communications with such providers "about improper topics, including spoliation of evidence." (Doc. 302 at 1). Plaintiff points to no evidence that Defendants have actually communicated with any medical provider on "improper topics, including spoliation of evidence." Instead, he cites to the supposedly "alarming language and tone" of a letter Plaintiff's counsel received from Defendants' counsel on or about November 8, 2024[3] in arguing that Plaintiff reasonably believes such *ex parte* communications are "imminent." The November 8, 2024 letter refers to an attached one-page letter marked "CONFIDENTIAL" and addressed to Plaintiff's treating neurologist, Allan Block, with the date of September 1, 2023[4] and the name and address for BlueCross Blue Shield of Texas ("BCBS") typed at the top but no signature on the page. As far as the Court can tell, the BCBS letter states in full as follows:

> You are required to destroy or further protect any PHI you received pertaining to patients that you are not currently treating. You are required to immediately destroy any such PHI, or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.
>
> If you are not an authorized recipient of this notice, please notify Carelon Medical Benefits Management, Inc. at (844) 423-0880.

(*Id.* at 3).[5]

---

[3] The letter is dated November 8, 2024 and states that it was sent via email. *See* (Doc. 302-1 at 1).

[4] The Court notes that the date on the BCBS letter is shortly after Dr. Block was first disclosed in this lawsuit as a treating physician. *See* (Doc. 296 at 3).

[5] The contents of the BCBS letter is odd, to say the least. To begin with, it refers to "PHI" without any explanation or definition for that term. Moreover, the letter fails to provide the source of the asserted requirement to "immediately destroy" protected health information ("PHI"). In fact, there are rules against destroying evidence relevant to legal proceedings that are either anticipated or in progress. *See Grant v. Aragon*, No. 24-CV-216-WJ-SCY, 2024 WL 3273826, at *2 (D.N.M. July 2, 2024) ("New Mexico recognizes the tort of intentional spoliation of evidence."). In addition, the

The November 8, 2024 letter to Plaintiff's counsel states that Defendants recently obtained the BCBS letter "[f]rom the documents produced by Dr. Block," and further, that it was Defendants' counsel's "understand[ing] that th[e] [BCBS] letter was produced to Plaintiff's counsel [by Dr. Block] … on September 27, 2023," but that Plaintiff neither produced it to Defendants in discovery nor identified it in his privilege logs. (*Id.* at 1). As a result of this recent discovery, Defendants' counsel stated that their staff would "be contacting staff of all providers to determine if records have been withheld or destroyed." *Id.* As Defendants' counsel further explained: "We know of no rule or requirement preventing this contact and believe it is warranted under the circumstances. If you object to this direct contact, you should seek Court intervention." (*Id.*).

As the November 8, 2024 letter suggested, Plaintiff responded by seeking Court intervention, i.e., this Motion, but oddly neglected to mention the letter when he did so. The Court is not obliged to consider and rule on matters raised for the first time in a reply. *See Christians in the Workplace Networking Grp. v. Nat'l Tech. & Eng'g Sols. of Sandia, LLC*, No. 1:22-CV-0267 DHU/DLM, 2023 WL 4847435, at *3 n.2 (D.N.M. July 28, 2023) ("[I]t is common practice in this district to disregard arguments raised for the first time in reply briefs."). The Court declines to do

---

BCBS letter fails to provide the source of the asserted prohibition against "us[ing]" or "disclos[ing]" such information under *any* circumstances (i.e. "in no event"). At the very least, protected health information may be disclosed in certain circumstances, including pursuant to a properly executed HIPAA release form such as the one executed by Plaintiff. *See* (Doc. 298-2 ¶ 4 (providing that Plaintiff "expressly waive[s] any laws, regulations, and rules of ethics which might prevent any healthcare provider who has examined or treated [him] from disclosing [his] records pursuant to this Authorization")); *see also Lajeunesse v. BNSF Rwy. Co.,* No. CV 18-0214 KG/JHR, 2019 WL 3017127, at *3 (D.N.M. July 10, 2019) ("'[W]hen an individual executes a valid HIPAA authorization, he waives all HIPAA protection as to the health information covered by the authorization, including the protections against litigation-related disclosures.... Accordingly, no other HIPAA exception for disclosure needs to be satisfied once an individual signs a valid written authorization.'" (internal quotation marks omitted) (quoting *Murphy v. Dulay,* 768 F.3d 1360, 1374 (11th Cir. 2014) (citing 45 C.F.R. § 164.508))).

so here other than to address generally the legal arguments Plaintiff makes in his Reply, which arguments are essentially the same ones Plaintiff made in his Motion. The Court first will address those legal arguments in the context in which they originally were made, which both the Court and Defendants construed as being *ex parte* communications relating to administrative discovery matters such as deposition scheduling and HIPAA releases. The Court then will address the same arguments in the context of *ex parte* communications relating to the existence and production of medical records and associated patient files. The Court will end its discussion by addressing Defendants' request for attorney's fees and costs in connection with the Motion.

      **B.**      ***Ex Parte* Communications Concerning Administrative Matters Related To Discovery.**

Up until now, Defendants apparently have deferred to Plaintiff's demands regarding no direct contact with Plaintiff's treating physicians, even for deposition scheduling purposes, with the result being that numerous treating provider depositions have yet to take place. Defendants' counsel first attempted to bring this issue to the Court's attention in early August 2024 by sending the Court a letter requesting permission to have Defendants' "staff contact the staff members of Plaintiff's medical providers for the sole purpose of obtaining deposition dates, determining location of treating providers and obtaining available imaging, medical bills and medical records." (Doc. 264-1). Defendants stated that their letter was an attempt to resolve the *ex parte* contact issue without engaging in "unnecessary motions practice." *Id.* But a request for relief from the Court *must* be made by motion. *See* Fed. R. Civ. P. 7(b)(1). Defendants could have avoided at least some of the delay that has occurred in the scheduling of depositions had they filed a motion to resolve this issue rather than raise the issue in the procedurally improper manner of a letter to the Court. *See* Fed. R. Civ. P. 1 (providing that the Federal Rules of Civil Procedure "should be construed,

administered, and *employed* by the court and *the parties* to secure the *just, speedy, and inexpensive determination* of every action and proceeding") (emphasis added).

Defendants represent that, at the time of the Response's filing, two treating provider depositions had occurred, five treating provider depositions were currently scheduled, and Defendants were trying to arrange the depositions of at least four others. As Defendants explained, "[w]ith *eleven* depositions of treating providers in different stages of completion, there are numerous clerical, billing and administrative issues that must be handled" (Doc. 298 at 2-3 (emphasis in original)), including:

(1) determining where the deposition will occur (requiring a staff member to contact the provider's staff to determine if he or she has access to a conference room or other quiet space that can accommodate the attorneys, court reporter and Plaintiff's videographer, and, if not, to find an acceptable outside conference room rental);

(2) determining what technology will be needed (requiring a staff member to contact the provider's staff to determine whether the provider has access to a web camera, internet access, microphone and a screen large enough to see document, and if not, to obtain appropriate rental equipment or a reservation at a third-party video conferencing site);

(3) ensuring necessary delivery of video conferencing credentials and exhibits are sent to the deponent in advance of the deposition; and

(4) making arrangements for payment to be made to the medical providers prior to the deposition (requiring a staff member to obtain an invoice from the provider, a W-9, payment instructions, and a mailing address).

(*Id.*).

The Court agrees with Defendants that the staff contact outlined above "is *routine,* occurs in virtually all personal injury cases and is an essential part of a well-ordered litigation." (*Id.* at 1-2 (emphasis in original)). Thus far, Defendants have attempted to accomplish all of these routine administrative matters mostly without direct contact with the providers' offices, presenting numerous logistical problems. (*Id.* at 3). There is no justification for these logistical problems to

continue to interfere with any party's ability to conduct discovery in a timely manner. To hold otherwise is to interject additional and unnecessary obstacles, further increasing costs for all involved. *See* Fed. R. Civ. P. 1, *supra*.

The only argument Plaintiff makes for why the Court should grant a protective order prohibiting Defendants from contacting Plaintiff's treating medical providers for the purposes stated in Defendants' Response is that such *ex parte* contact is somehow prohibited by New Mexico's public policy related to the confidential relationship between a physician and patient. The referenced "public policy" is rooted in the patient-physician privilege. Whether a patient-physician privilege is available to Plaintiff in this case is determined by state law. *See* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *see also Dorato v. Smith*, 163 F. Supp. 3d 837, 870 (D.N.M. 2015) (citing *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 699 (10th Cir. 1998)).

Under New Mexico law, a patient-physician privilege applies to "confidential communication[s] made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition." Rule 11-504(B) NMRA. New Mexico's patient-physician privilege, however, does *not apply* in a case such as this, where a party "relies on a physical, mental, or emotional condition as part of a claim or defense." Rule 11-504(D)(3) NMRA; *see Griego v. Douglas*, No. CV 17-0244 KBM/JHR, 2018 WL 2376330, at *5 (D.N.M. May 24, 2018) ("Rule 11–504(D)(3) does not speak in terms of waiver; where it applies there simply is no privilege." (quoting *Pina v. Espinoza*, 2001-NMCA-055, ¶ 13, 130 N.M. 661, 665, 29 P.3d 1062, 1066)).

Notwithstanding that New Mexico law does not accord Plaintiff a patient-physician privilege in this case, Plaintiff relies on New Mexico public policy as stated by the New Mexico Supreme Court in *Smith v. Ashby*, 1987-NMSC-098, 106 N.M. 358 743 P.2d 114. *Smith* held that

*ex parte* "discussion of a patient's medical confidences" are prohibited by New Mexico's strong public policy in favor of the confidential patient-physician relationship even in circumstances in which there is no actual privilege. *Id.* ¶ 5, 106 N.M. at 360, 743 P.2d at 116. The rationale behind this public policy is that "'practices and procedures in litigation should not allow for unnecessary breakdown of the trust and confidentiality embodied in the physician-patient relationship.'" *Lajeunesse,* 2019 WL 3017127, at *3 (quoting *Smith*, 1987-NMSC-098, ¶ 5).

Assuming a federal court should defer to state public policy tangential to Federal Rule of Evidence 501 (since no privilege is actually at issue), nothing in the state court cases cited by Plaintiff applying that public policy would suggest a flat ban on *ex parte* communications of any nature between a litigant's attorney and the opposing party's treating physician. Rather, the public policy, like the patient-privilege itself, necessarily applies only to extra-judicial or *ex parte* discussions or communications with a medical provider which concern *a patient's physical or medical condition*. *See, e.g., Church's Fried Chicken No. 1040 v. Hanson*, 1992-NMCA-115, ¶ 16, 114 N.M. 730, 734, 845 P.2d 824, 828 (forbidding opposing counsel to conduct *ex parte interviews* of plaintiff's treating physician). In other words, the public policy cited by Plaintiff does not prevent Defendants from contacting Plaintiff's treating physicians on an *ex parte* basis for the logistical purposes discussed above. In making the proposed contacts, Defendants are not in any way seeking confidential patient-physician communications from the providers outside of Plaintiff's presence. Defendants merely seek to communicate directly with Plaintiff's treating physicians for purposes of scheduling and making necessary arrangements for the taking of those physicians' depositions and/or to obtain medical records. That type of contact plainly falls outside

of New Mexico's prohibition of contacting a patient's physician for the purpose of seeking confidential medical information about the patient on an *ex parte* basis.[6]

As somewhat of an aside to the New Mexico public policy argument, Plaintiff also mentions "[e]thical guidelines, such as those from the American Medical Association," which purportedly "support the confidentiality of the physician-patient relationship and discourage *ex parte* communications without the patient's consent." (Doc. 297 at 3). But as the court held in *Bryant v. Hilst*, 136 F.R.D. 487 (D. Kan. 1991), a medical code of ethics is "inapplicable" to the legal issue before the court because it is "not binding law." *Id.* at 492. Plaintiff cites *Bryant* for having "highlighted" the AMA ethical guidelines, misleadingly suggesting that *Bryant* cited those rules favorably or in some manner that supported Plaintiff's argument. In fact, the opposite is true. Indeed, the *Bryant* court, applying Kansas law, went well beyond this Court's current ruling by rejecting, *even as to* substantive communications regarding a patient's treatment and care, the public policy argument Plaintiff makes here. As the *Bryant* court reasoned:

> It is plaintiff that has placed his medical condition in issue in this action. Plaintiff's treating physicians and other health care providers are fact witnesses. What plaintiff requests is complete control over a group of fact witnesses. … The court believes that both parties should have unfettered access to fact witnesses and that informal discovery from these witnesses should be encouraged.

*Id.* at 491–92 (emphasis in original). Finding the plaintiff's argument in that case based on confidentiality beside the point, the court stated:

> While the information is clearly confidential, when the patient files an action placing his medical condition in issue, the patient no

---

[6] *See, e.g., Lajeunesse*, 2019 WL 3017127, at *4 ("Put simply, the Court determines that the conduct at issue here – where BNSF's counsel's paralegal attempted to reach Mr. Aragon for the purpose of seeking contact information for Mr. Vigil, and additionally, followed up with Dr. Nueger's office for the purpose of seeking Mr. Lajeunesse's medical records – does not rise to the level of an *ex parte* 'discussion of a patient's medical confidences' that New Mexico condemned in *Smith*.").

>longer has the right to preclude the physician from disclosing, to the adverse party in that litigation, facts related to the physician-patient relationship, notwithstanding the confidentiality which continues to exist as to disclosure to persons not related to the pending litigation. The physician is simply released from the constraints of the confidential relationship for the purposes of the litigation. Had the legislature intended otherwise, it would have provided so.

*Id.* at 492. The Court continues to be surprised by Plaintiff's citation to cases that not only do *not* support the argument he is advancing, but in some instances, like with *Bryant,* actually hold the *opposite* of the proposition for which Plaintiff purports to cite them. *See, e.g.,* (Doc. 296 at 16-17 n. 10).[7]

In sum, Defendants have shown through multiple filings in this Court that they have been attempting to depose Plaintiff's treating physicians, yet for whatever reason those depositions have not taken place. Up until now, Defendants have mostly voluntarily refrained from contacting the

---

[7] The other cases cited by Plaintiff are distinguishable for a number of reasons. For instance, *Neal v. Boulder*, 142 F.R.D. 325, 326 (D. Colo. 1992), like *Smith*, 106 N.M. 358, and *Church's Fried Chicken No.1040*, 114 N.M. 730, deals with the issue of *ex parte* communications *about the patient's treatment*. Again, Defendants are not asking to communicate *ex parte* with treating physicians on substantive issues *concerning Plaintiff's medical care.* In addition, the outcome in *Neal* turned on the Colorado Supreme Court's decision in *Fields v. McNamara*, 189 Colo. 284, 540 P.2d 327 (1975), which that court has since disavowed. *See Samms v. Dist. Ct., Fourth Jud. Dist. of State of Colo.*, 908 P.2d 520, 527 (Colo. 1995) (en banc) ("to the extent that our decision in *Fields* suggests that in civil actions trial courts may not authorize a defense attorney, in the absence of the plaintiff or the plaintiff's attorney, to informally interview physicians who have treated the plaintiff regarding matters that are not subject to the physician-patient privilege, we disapprove of that decision"). And *Fox v. Gates Corp.*, 179 F.R.D. 303 (D. Colo. 1998), held only that the defendant was "entitled to discovery of the identities of plaintiff's health care providers and the dates of treatment," because that information was "relevant to plaintiff's claim for emotional distress damages and [was] not privileged, as it d[id] not pertain to the substance of a confidential communication." *Id.* at 305. While the court concluded with the statement that the defendant was "not authorized to engage in *ex parte* communications with plaintiff's health care providers," *id.* at 308, the case involved an employment discrimination claim and the plaintiff represented that she did not intend to call any of her health care providers to testify at trial in support of her claim for emotional distress damages. *Id.* at 305. Therefore, the Court does not see the relevance of that court's ruling forbidding *ex parte* communication to the situation here, where Plaintiff's treating medical providers are essential witnesses in support of Plaintiff's damages claims.

physicians directly and have allowed Plaintiff to control the scheduling process. Their efforts to make all appropriate arrangements so that the treating physicians may be deposed, with Plaintiff maintaining control over any communications with the deponents, have been ongoing for at least the past nine months and possibly longer, with the result apparently being that nine or more treating physicians have yet to be deposed. Given the serious delays that have occurred in scheduling the depositions of Plaintiff's treating physicians, the Court is left with substantial doubt that Plaintiff's counsel should continue in their role as the gatekeeper of scheduling and related logistical or other arrangements that need to be made in order to complete the depositions that remain to be taken. In this Court's view, under the circumstances of this case, the Court's Rule 1 obligation of ensuring a "just, speedy, and inexpensive determination" of this action is best achieved by denying Plaintiff's Motion, and explicitly authorizing Defendants to communicate with Plaintiff's treating physicians directly, as necessary, for the purposes stated in Defendants' Response.

   **C.**  ***Ex Parte* Communications Concerning Document Production and Related Investigations, If Any, Into Potential Discovery Abuse.**

The issue of document subpoenas for Plaintiff's medical records was encompassed by Plaintiff's original Motion. Thus, although the Motion itself failed to even mention the HIPAA release that Plaintiff executed allowing Defendants to obtain his medical records directly from his treating providers, Defendants argued in their Response that they are authorized by the HIPAA release form to contact Plaintiff's treating physicians or their staff directly for purposes of obtaining medical records. *See* (Doc. 298-2).[8]

---

[8] The HIPAA release authorizes the medical providers to release directly to Defendants' attorneys:

> all medical records and billing records including without limitation: medical reports, clinical notes, nurse's notes, history of injury, subjective and objective complaints, x-rays, x-ray reports or interpretations, other diagnostic tests (including a copy of the report), diagnosis and prognosis; if applicable, emergency

Plaintiff asserts in his Reply that he "does not dispute Defendants' ability to serve HIPAA releases, subpoenas, or other routine correspondence for administrative purpose." (Doc. 302 at 1). The Reply asserts, however, that the "tone, timing, and language" (*id.* at 2) of Defendants' November 8, 2024 letter suggest that Defendants might contact Plaintiff's treating providers about "improper" topics, such as "spoliation of evidence" (*id.* at 1), or for the improper purpose of "suggest[ing] [the providers] had destroyed or withheld records" (*id.* at 2). On its face, however, the letter states only that Defendants want to "determine"—i.e., investigate—"*if* records have been withheld or destroyed." (Doc. 302-1 at 1 (emphasis added)). The Court is not aware of any rule or principle of law that would make it improper for a party to investigate potential discovery abuse. Nor is the Court aware of any public policy of the State of New Mexico that would permit an opposing party to maintain control over his opponent's investigation into discovery abuse by forbidding the investigating party to make independent inquiries outside the presence of the opposing counsel not about the contents but about the existence of documents in the possession of third parties.

Plaintiff asserts that he has the right to control Defendants' investigation by insisting on his counsel being part of any communications on the subject between Defendants' counsel or their staff, and the staff of the treating physicians in question, for two reasons: (1) the communications

---

> room records or logs, history and physical examination report, laboratory reports, tissue committee reports, reports of operation, operation logs, progress notes, doctors' orders, nurse's notes, physical therapy records, admission and discharge summaries, and all out-patient records; hospital bills, bills for the services [the provider] ha[s] rendered, bills for medication; and any other documents, records, or information in [the provider's] possession relative to [Plaintiff's] past, present or future physical condition.

(Doc. 298-2 ¶ 3).

in question are "on substantive matters, such as the alleged spoilation of evidence, which could improperly influence providers or lead to inadvertent disclosure of privileged information"; and (2) "New Mexico law strongly protects the confidentiality of the physician-patient relationship." (Doc. 302 at 3). In the first place, the term "improperly influence" is meaningless without identifying the specific conduct at issue and in what way it is "improper." Second, Plaintiff does not define what he means by "privileged information." As previously discussed, the patient-physician privilege does not apply to this case. To the extent that Plaintiff is referring to some other "privilege," he has not explained what that is. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 880 & n. 9 (10th Cir.1997) (holding that party who only made "several broad, conclusory statements" about an issue waived argument for failure to develop it). Finally, the Court has already rejected Plaintiff's argument based on New Mexico's public policy protecting the confidentiality of the physician-patient relationship. As discussed, that public policy relates to *ex parte* communications concerning confidential information about a patient's medical condition or treatment. Plaintiff has not shown how communications about the existence and production of records in the possession of treating providers, which does not delve into the content of medical records relating to or reflecting medical conditions or treatment, would contravene that public policy.[9]

---

[9] Plaintiff would have the Court equate the spoilation issue with substantive issues regarding the treating physician's treatment of Plaintiff in order to justify application of New Mexico's public policy against *ex parte* contact with treating physicians. But that public policy is an off-shoot of the patient-physician privilege, pursuant to which, "[a] patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, *made for the purposes of diagnoses or treatment of the patient's physical, mental or emotional condition* ... among the patient, the patient's physician or psychotherapist, or persons who are participating in the diagnosis or treatment...." *Mosley v. Titus*, 762 F. Supp. 2d 1298, 1318 (D.N.M. 2010) (quoting Rule 11–504 NMRA). The issue of record retention or destruction does not implicate "confidential communications, made for the purposes of diagnoses or treatment of the patient's physical, mental or emotional condition," and thus falls outside of not only the privilege but the public policy

The *Bryant* court explained the logic behind *not* limiting communications by an opposing party with treating physicians:

> If the court were to grant plaintiff's request, plaintiff's counsel would have unrestricted access to these witnesses, but *by the court's order* defendant's counsel would not be allowed to interview these witnesses simply because they were treating physicians, although they are witnesses with nonduplicable information concerning major areas of the action, the plaintiff's medical condition, disabilities, damages and causation. Defendant's counsel would be limited to taking the deposition of any treating physician or foregoing the knowledge of evidence which might be material to the case. Defendant's counsel would always be required to expend the funds necessary to take a deposition in order to determine whether treating physicians are in possession of any facts material to the the action. As a result, the costs to defendant would be materially increased to obtain the same facts available to plaintiff without deposition costs. Plaintiff would have regular access on multiple occasions to each witness, while defendant would be limited to a single "on the record" inquiry. There is no such similar circumstance with respect to other fact witnesses. One party generally may not limit the access of the other party to fact witnesses.

*Bryant*, 136 F.R.D. at 491–92 (emphasis in original). The logic of the *Bryant* court's analysis cannot be applied to this case insofar as *ex parte* communications related to patient care and treatment are concerned because of New Mexico's public policy as stated by the New Mexico Supreme Court in *Smith*. But that same logic has even greater force when applied to communications that do *not* relate to confidential medical information about patient care and treatment. The latter category of information is at issue here, i.e., communications concerning the existence and production in discovery of relevant medical and related patient records.

---

against *ex parte* communications concerning matters that would otherwise be subject to the privilege. The Court also rejects Plaintiff's speculation, that substantive discussions regarding the prohibited topics will or are likely to occur in the course of discussions regarding permitted topics, as "just that, speculation." *Lajeunesse*, 2019 WL 3017127, at *4. There simply is no reason for the Court to believe that Defendants' counsel plan to talk directly with treating providers to engage them in conversation *about Plaintiff's treatment*, and/or solicit *medical opinions* from them, without Plaintiff or his counsel being present.

15

At one point in his Reply, Plaintiff refers to "substantive issues surrounding treatment *or* the accuracy and completeness of record-keeping" (Doc. 302 at 5 (emphasis added)), thereby acknowledging for the first time that issues related to medical treatment are distinct from issues relating to the accuracy and completeness of records. The patient-physician privilege only pertains to the first set of issues.[10] There is no reason to believe that the New Mexico Supreme Court intended the public policy against *ex parte* communications to relate to any set of issues other than those pertaining to medical treatment and patient care. Nor does the Court independently find that public policy supports limiting to formal depositions Defendants' investigation of matters related to the conduct of discovery and record-keeping. Without drawing any conclusions or prejudging any matter about what evidence that investigation might uncover, it is only necessary to acknowledge there is at least the possibility it might show discovery misconduct and that Plaintiff or his counsel was involved in that misconduct. If that were the case, limiting the investigation to a formal deposition is not only more costly to Defendants but runs the risk of preventing relevant information from being uncovered.[11] There simply is no public policy to support giving Plaintiff's counsel that kind of control and influence over third-party fact witnesses, such as treating

---

[10] Plaintiff also cites to the HIPAA release which expressly states that it does not permit Defendants' counsel to "obtain or request … oral statements, opinions, interviews, or reports [of the provider] that are not already in existence." (Doc. 298-2 ¶ 8). But, again, the subject of record retention or destruction does not implicate statements, opinions, interviews, or reports of treating providers regarding Plaintiff's physical or mental condition or treatment. Nor does Plaintiff even argue otherwise. Instead, he merely argues that such conversations "encroach on substantive issues" without acknowledging that the "substantive issue" they may encroach on has to do with discovery and possible withholding of evidence, not Plaintiff's medical care, diagnoses, or treatment.

[11] The Court acknowledges that Plaintiff responded to Defendants' November 8, 2024 letter with his counsel's explanations concerning the BCBS letter. Those explanations may well prove valid. But the only issue at this time is whether and how Defendants may investigate the matter, not how it is to be resolved.

physicians, as it would interfere with the search for truth without serving any corresponding public or legitimate private interest.

### D. <u>Attorney's Fees and Costs</u>

Finally, the Court addresses Defendants' request that the Court award reasonable fees and costs in responding to the Motion. (Doc. 306 at 6). The Court has denied Plaintiff's Motion in its entirety and affirmed Defendants' objections thereto. Thus, the Court finds that Defendants may be entitled to an award of reasonable expenses, including attorney's fees. *See* Fed. R. Civ. P. 26(c)(3) (stating that Rule 37(a)(5) applies to an award of expenses for a motion seeking a protective order); Fed. R. Civ. P. 37(a)(5)(B) ("If the motion [for protective order] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.").

The Court notes that the Motion does not include the required "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see also* D.N.M. LR-Civ. 7.1(a) (requiring moving party to determine whether a motion is opposed). "[A] motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M. LR-Civ. 7.1(a). Because Defendants responded to the Motion with their objections, the Court proceeded to address Plaintiff's arguments on the merits notwithstanding his counsel's failure to satisfy the consultation requirement of Rule 26(c)(1). Still, the Court may take into consideration Plaintiff's counsel's failure to comply with the duty of good faith consultation in deciding whether expenses in responding to the Motion are warranted. Expenses may also be warranted here by the fact that

17

Plaintiff failed to reveal the specific circumstances leading to his request for a protective order until his Reply. It is simply incredible for Plaintiff to contend that he was unaware of Defendants' November 8, 2024 letter, which Plaintiff claims to be the reason for his filing of the Motion, or that the letter was unessential to the Court's analysis of whether to grant the relief requested in the Motion. As a result, one might draw the conclusion that Plaintiff purposefully held this information back until his Reply for tactical or strategic reasons. At the very least, his failure to be upfront in the original Motion about the basis for the Motion likely led to potentially unnecessary motions practice, a conclusion buttressed by Plaintiff's statement in his Reply that, *since* the filing of the Motion, he has conferred with Defendants and "several procedural matters" have been resolved. (Doc. 302 at 4).

Nevertheless, a determination on whether to award expenses may not be made without affording the party against whom expenses may be awarded the "opportunity to be heard" on the issue of whether "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). For an "opportunity to be heard," "[a]n actual hearing is not necessary ..., and the Court may consider the issue of expenses on 'written submissions.'" *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616. 622 (D. Kan. 2005); *see Fears v. Wal–Mart Stores, Inc.*, No. 99–2515–JWL, 2000 WL 1679418, at *6 (D. Kan. Oct.13, 2000) (citing Advisory Committee Note to the 1993 Amendments to Rule 37(a)(4)). "The 'written submission' requirement is met where the moving party requests expenses in its motion or supporting brief and the opposing party is given the opportunity to submit a brief in response." *Id.*; *see also N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. 12-cv-526 MV/GBW, 2017 WL 4271330, at *2 n.1 (D.N.M. Sept. 25, 2017) (explaining the

opportunity to be heard "requirement is met where, as here, the opposing party seeks sanctions in its briefing and the sanctioned party has an opportunity to respond thereafter") (citation omitted).

Here, Defendants did not request fees and expenses until their Sur-Response. Thus, Plaintiff has not been given sufficient "opportunity to be heard," and the Court will decline to award fees and expenses at this time. To satisfy the "written submissions" rule, the Court will direct Plaintiff to show cause, in writing, why the Court should not award Defendants their reasonable expenses, including attorney's fees, incurred in opposing the Motion. In the event the Court determines that expenses and fees should be awarded, the Court will issue an order setting forth a schedule for the filing of an affidavit reflecting the amount of fees and expenses that Defendants have incurred, and for the filing of any related briefs.

## Conclusion

1. For the foregoing reasons, the Court **ORDERS** that Plaintiff's Emergency Motion For Protective Order To Prevent *Ex Parte* Communications With Plaintiff's Medical Providers, **Doc. 297**, be **DENIED**. Pursuant to Rule 26(c)(2), Plaintiff shall take any and all actions necessary to facilitate and permit Defendants to contact Plaintiff's treating physicians directly, i.e., on an *ex parte* basis, for purposes of scheduling and making arrangements of any kind related to the depositions of those physicians, and/or to obtain, or investigate the non-medical circumstances surrounding the creation, retention, or destruction of, medical records relevant to the issues in this lawsuit. *See* Fed. R. Civ. P. 26(c)(2) ("If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.").

2. **IT IS FURTHER ORDERED** that Plaintiff shall show cause, in writing, within **twenty-one (21) days** of this Memorandum and Order, why the Court should not award Defendants their reasonable expenses and attorney's fees incurred in defending against Plaintiff's

Motion. Defendants shall have **fourteen (14) days** thereafter to file a response thereto, and Plaintiff shall have **seven (7)** days thereafter to file any reply.

SO ORDERED this 6th day of December, 2024.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE